UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80162-CIV-ZLOCH

TOWBOAT ONE, INC.,

        Plaintiff

**O R D E R**

vs.

M/V WATERDOG, Official No.
922760, her engines, tackle,
appliances, appurtenances,
furniture, gear and all other
necessaries thereto and
belonging, in rem, et al.,

        Defendants.

_____/

THIS MATTER is before the Court upon Plaintiff Towboat One, Inc.'s Amended Motion To Strike Certain Affirmative Defenses (DE 17). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

On October 3, 2007 the vessel Defendant M/V Waterdog (hereinafter "Waterdog") was operating in navigable waters off the Coast of Florida. She began taking on water after her bilge-pumping system malfunctioned and immediately issued a distress call. Plaintiff responded and offered salvage assistance to the Waterdog's Master; it was gratefully accepted. Plaintiff's personnel and equipment came aboard the Waterdog to "de-water" the ship, the hole was then located, addressed, and the ship was navigated back to port. After the Waterdog and its passengers and crew were safe, it came time to resolve Plaintiff's bill. Unfortunately, the Parties could not amicably resolve the issue of

Plaintiff's compensation, and it filed this suit to establish the amount owed and force payment of the same.  Defendants counter that Plaintiff's claims are unreasonable and a lesser sum, if any, is owed for her services.

In support of their position that a lesser sum is appropriate for Plaintiff's services, Defendants listed several Affirmative Defenses in their Answer (DE 5).  In the instant Motion (DE 17), Plaintiff moves to strike two of the Affirmative Defenses.  The first is Defendants' Seventh Affirmative Defense, which has been withdrawn by stipulation of counsel.  See DE 18, pp. 1-2.  The remaining relief sought in the instant Motion (DE 17) centers on Defendants' Third Affirmative Defense.

The Third Affirmative Defense is addressed to Plaintiff's lack of a license to salvage on the Coast of Florida, as required by 46 U.S.C. § 80102.  Defendants argue that because Plaintiff lacked the requisite license for salvaging at the time it came to the Waterdog's rescue, Plaintiff "may be precluded from a salvage award and/or may have its reward reduced (if any is allowed)."  DE 5, p. 4.  In response Plaintiff argues that § 80102 is unconstitutional; therefore, it is not obliged to procure a license under it. Defendants insist that the Third Affirmative Defense is proper and cite caselaw from the nineteenth century to the Court that supports the defense: namely, that unlicensed salvors or wreckers are entitled to less compensation than licensed salvors or wreckers

2

when services are rendered at sea.  DE 18, pp. 2-4.

The statute in question is a peculiar remnant of the early nineteenth century, passed in its original form when Florida was still a territory.  Act of May 23, 1828, 4 Stat. 291.  It was originally addressed to "wreckers," which was the term then used to describe those who engaged in the practice of salvaging on the Coast of the Florida Keys.  Id.; see also William Marvin, A Treatise on the Law of Wreck and Salvage 2 (1858).  Its principal purpose was to combat the problem of nefarious characters who would place lanterns near the reefs, obscuring the ships captains' view of the lighthouses around the Florida Keys, in hopes of drawing merchant ships into the surrounding reefs.  It was later codified as part of the United States Code and placed at Title 46, U.S.C. Section 724.[1]

As noted more fully in A Treatise on the Law of Wreck and Salvage, the wrecking practice, as it was known, was centered in the Florida Keys. Elsewhere, the same practice of rescuing ships and cargo was known as "salvaging" and those who engaged in the

---

[1]46 U.S.C. § 724 (2000) read in full: No vessel, or master thereof, shall be regularly employed in the business of wrecking on the coast of Florida without the license of the judge of the district court for the district of Florida; and, before licensing any vessel or master, the judge shall be satisfied that the vessel is seaworthy, and properly and sufficiently fitted and equipped for the business of saving property shipwrecked and in distress; and that the master thereof is trustworthy, and innocent of any fraud or misconduct in relation to any property shipwrecked or saved on the coast.

enterprise were known as "salvors."  Over the years, as the trade became less localized to the Florida Keys, those who referred to themselves as wreckers diminished, and the applications for licenses under § 724 waned.  See In re Beck, 526 F. Supp. 2d 1291, 1293-95 (S.D. Fla. 2007) (Zloch, J.)

In 2006, Congress re-codified Title 46 of the United States Code, the statute then at 46 U.S.C. § 724 (2000) was amended into its present form, with the term "salvaging" used instead of the term "wrecking," and it was now placed at § 80102.  It is the current statute that has increased petitions for such licenses in this District and in the Middle District of Florida.  This can be specifically attributed to the statute's use of the term "salvaging."  See In re Beck, 526 F. Supp. 2d at 1293-95.  The 2006-version of the statute mandates that "[t]o be regularly employed in the business of salvaging on the coast of Florida, a vessel and its master each must have a license issued by a judge of the district court of the United States for a judicial district of Florida."  46 U.S.C. § 80102(a) (2006).

As a matter of tradition that grew up around the original statute, wreckers who lacked a license forfeited the right to any award for their efforts.  Marvin, supra at 2-21.  Defendants' Third Affirmative Defense seizes on this tradition and a smattering of caselaw from the mid-1800's that supports it.  See DE 18, p. 3 (citing Roberts v. The St. James, 20 F. Cas. 921 (S.D. Fla. 1872)

(No. 11,914) and <u>Pent v. Two Thousand Eight Hundred & Fifty Dollars</u>, 19 F. Cas. 205 (S.D. Fla. 1880) (No. 10961A)).  It's argument is that if a salvor lacks a license it forfeits its award, in part or full.  <u>Id.</u>

Plaintiff's argument in the face of this precedent is that, while this tradition is well-grounded, it is built on an unconstitutional licensing system.

The licensing system is constitutionally problematic, and in an unrelated case this Court previously considered the constitutionality of 46 U.S.C. § 80102.  <u>See In re Beck</u>, 526 F. Supp. 2d at 1295-1304.  The Court therein sua sponte issued a constitutional challenge to § 80102.  In response, the United States declined to defend the constitutionality of the statute. <u>See</u> Response Of United States Of America, Case No. 07-80535-CIV-ZLOCH of the Southern District of Florida, DE 30 (declining to defend the constitutionality of § 80102).  However, due to the procedural posture therein, the Court was precluded from reaching the merits of the constitutional question and striking down § 80102 as unconstitutional.  In <u>Beck</u> the petition was filed  <u>ex parte</u>, there was no adverse party and thus no case or controversy for the court to adjudicate.  And when a suit does not present a court with a case or controversy, it is powerless to use its judicial powers, this includes the ability to strike a statute down as unconstitutional.  <u>In re Beck</u>, 526 F. Supp. 2d at 1304-05.

While the Court was restrained in its ability to rule on the constitutionality of § 80102, the Court did detail the various reasons why it could not constitutionally grant the license sought by petitioner therein: namely, that the issuance of licenses is not contemplated in the grant of judicial power found in Article III, Section 1 of the Constitution.  Since an Article III court can exercise no other power than the judicial power, any action outside those contemplated in the Constitution's grant of judicial power is <u>ultra</u> <u>vires</u>, and thus unconstitutional.  The Court finds no reason to further reiterate the reasoning fully set forth in <u>In re Beck</u> for why § 80102 is unconstitutional and incorporates the same herein by reference.

Defendants mistakenly assume that because the Order in <u>In re Beck</u> did not address the central issue in this case, whether an unlicensed wrecker or salvor deserves reduced compensation or none at all, that the reasoning therein does not affect their Affirmative Defense.  DE 18, p. 3.  The constitutionality of a law has a direct impact on the duties of those whose efforts it would direct, because an unconstitutional law is no law at all.  It has no force and effect upon those who, by the statute's letter, would operate under it.  The Supreme Court has summarized the principle as this: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though

6

it had never been passed." <u>Norton v. Shelby County</u>, 118 U.S. 425, 442 (1886). Because a license purportedly issued under the licensing statute <u>sub judice</u> is unconstitutional and does not vest any duties or establish any rights upon those wreckers or salvors issued the same, it cannot be argued that the lack of a license subjects a wrecker or salvor to less than full recovery.

In contrast to the petition in <u>Beck</u> where the Court could not exercise its judicial powers to strike the statute down as unconstitutional because a case or controversy did not exist, the above-styled cause presents the Court with a case or controversy. The question of statute's constitutionality arises in the form of a motion to strike an affirmative defense in a suit where the parties and their interests are antagonistic to one another. Further, the basis for the Complaint is not the <u>ex parte</u> issuance of a salvaging license itself, but the recovery of fee owed for salvaging services performed without a license. Therefore, for the reasons fully expressed in <u>In re Beck</u> and incorporated herein by reference, the Court finds that 46 U.S.C. § 80102 is unconstitutional.[2] Any obligations it was thought to place upon Plaintiff to procure a license are of no force and effect; thus, Defendants' Third Affirmative Defense, addressing Plaintiff's lack

---

[2]Pursuant to Federal Rule of Civil Procedure 5.2 the Court gave the United States Attorney General Notice that the constitutionality of 46 U.S.C. § 80102 was challenged, and the Attorney General declined to intervene and defend it. <u>See</u> DE 22.

of a license, makes a constitutionally untenable argument and is without merit.  Pursuant to Federal Rule of Civil Procedure 12(f) Defendants' Third Affirmative will be struck from their Answer.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Towboat One, Inc.'s Amended Motion To Strike Certain Affirmative Defenses (DE 17) be and the same is hereby **GRANTED**;

2. Defendants' Third Affirmative Defense be and the same is hereby **STRICKEN**; and

3. The statute codified at 46 U.S.C. § 80102 (2006) be and the same is hereby **DECLARED** unconstitutional for the reasons more fully expressed above and incorporated by reference in In re Beck, 526 F. Supp. 2d 1291 (S.D. Fla. 2007) (Zloch, J.).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this ___24th___ day of June, 2008.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies Furnished:

All Counsel of Record